## Case No. 11,840.

RINEHART et ux. v. HARRISON.

[Baldw. 177.] [1]

Circuit Court, D. New Jersey. Oct. Term, 1830.

WILLS — LAND TREATED AS PERSONALTY — RESIDUARY LEGATEE — ELECTION — VESTED LEGACY.

1. It is no exception to the rule, that land directed to be sold and turned into money, is considered as money from the death of the testator, because the period of sale is remote, and the conversion cannot be made till the time arrives.

[Cited in Cropley v. Cooper, 19 Wall. (86 U. S.) 175; Ramsey v. Hanlon, 33 Fed. 426.]

[Cited in Milhollen v. Rice, 13 W. Va. 535; Nagle's Appeal. 13 Pa. St. 261. Cited in brief in Parkinson's Appeal, 32 Pa. St. 457.]

2. The rule applies to a bequest of the proceeds of the land to a residuary legatee, unless he has made an election to consider the proceeds as land; none but the first taker can make an election.

3. Such election cannot be by any person who is not entitled to the whole surplus.

4. There is no resulting trust to the heir, when all the bequests in the will take effect.

5. If the proceeds of land devised to be sold, are given to a feme covert, who dies before there can be a sale, the legacy is vested, the right to it devolves on her husband; and if he also dies before the sale, it goes to his representative, and not to the next of kin of the wife.

[Cited in Collier v. Grimesey, 36 Ohio St. 23. Cited in brief in Earnshaw v. Daly, 1 App. D. C. 221.]

This case arose on the will of Henry Harrison, which is set out in Reading v. Blackwell [Case No. 11,612]. The following case is agreed on by the parties. John Harrison, late of the county of Somerset, and state of New Jersey, made his last will and testament, bearing date the 17th day of June, 1815, and died on the 22d day of June, 1816, without revoking or altering the same, prout the said will, which is made a part of the statement of the case. Sarah Stockton, one of the legatees named in said will of the said John Harrison deceased. was the lawful married wife of Job Stockton, and died after the said John Harrison, to wit, on the 18th day of October, 1818, and without issue; and on the 26th day of November, in the said year 1818, administration of the goods and chattels, rights and credits which were of the said Sarah Stockton, were granted by John Frelinghuysen, surrogate of the county of Somerset, to the said Job Stockton, her husband, without bond or filing an inventory. Job Stockton departed this life intestate, in the month of February, 1820, without having received any part of the said legacy bequeathed to the said Sarah Stockton; and on the 30th day of March, 1821, letters of administration de bonis non, of Sarah Stockton, were duly granted by the surrogate of the county of Somerset, to Ebenezer Stockton and James S. Green. It is further admitted, that Adela Rinehart is the lawful married wife of John Rinehart, and that Adela Rinehart is the niece and one of the heirs at law of the said Sarah Stockton. If the court shall be of the opinion that the said John Rinehart, and Adela his wife, are entitled to any part of the said legacy so bequeathed to the said Sarah Stockton, then it is admitted that the said part is the one moiety of the said legacy, after allowance of the expenses of this suit, and the settlement of the estate of the said Sarah Stockton with the orphans' court of the county of Somerset. If the court shall be of opinion that the said John Rinehart and Adela his wife, are not entitled to said legacy, or any part thereof, then the same is to be paid by the said administrators de bonis non of Sarah Stockton, to the administrators of Job Stockton, deceased, for the benefit of his creditors and legal representatives. The fund in dispute proceeds from sales made by the executors in the month of ——, 1830, of that part of the testator's property which is thus disposed of in his will, viz.: "And after the aforesaid James Hamilton White shall, or in case of death, might have attained the age of 21 years, then to sell the said real estate in the city of New York, for the best price which can be obtained therefor; and in case of my son's death, to apply the proceeds of such sale. and the rents and profits thereof, in payment of the legacies aforesaid, and to carry the surplus, if any, to the residuary part of my estate." The death of the testator's son is agreed. Should the court desire any further addition of facts, with a view to the justice of the cause, such facts shall be added, and the case. argued upon its merits, with no regard to form, further than is necessary in the court's opinion.

C. J. Ingersoll, for complainant.

It is admitted that Sarah Stockton took a vested interest in the New York estate, but she took it as land, being capable of taking it in no other way, as she died before the trustees had any power to sell it, and while it was held as land, according to the express directions of the will appropriating the rents to specific purposes. Until March, 1830, when James H. White would become of age. the testator had stamped the estate with the character of land, which it must retain till the power to convert it into money arose. In such a case, the equitable fiction, that land directed to be converted into money, is considered as actually so converted, does not apply. As was expressed by the court in Reading v. Blackwell [supra], the rule applies to cases where it is for the benefit of those for whom the conversion is to be made, and to answer the purposes of the will; but if they are all satisfied, and there is a residue not required for any object expressed in the will, and no person pointed out who can take, it shall go to the heir. Dailey v. James. 8 Wheat. [21 U. S.] 531; semb., Smith v. Folwell, 1 Bin. 558. The question must turn on the intention of the testator: If we sup-

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

pose him to have contemplated the event which has happened, he could not have intended the bequest for the benefit of a stranger, and would have guarded against its going to the administrator of the husband, for the benefit of his relatives, to the exclusion of those of himself and niece. Judicial construction of the English statutes of distribution, and its adoption in this state, may make the husband next of kin to his wife; but it cannot be pretended that such construction was in the mind of the testator, or that it is consistent with reason or justice. The court will construe this will according to the directions and intention of the testator. This is the basis of the rule for considering lands as money, in cases like [Craig v. Leslie] 3 Wheat. [16 U. S.] 577, and 2 Penning. [3 N. J. Law] 754. As laid down in those cases, the rule is conceded, because there was a possibility of taking in possession, but in this case there was an express direction that no sale should be made till 1830. Had this been the case of a deed to the trustees, to hold the land for fifteen years, and then sell, the interest of Mrs. Stockton would, on her death within the fifteen years, have gone to her heirs as land. Equity would consider it otherwise, only for the objects and purposes of the will (1 Brown, Ch. 497; [Craig v. Leslie] 3 Wheat. [16 U. S.] 583), the rule being one of intention, and for the benefit of the heir. To hold this estate to be money, during the time when it is not to be sold, is to injure the heir and give a character to the estate directly the reverse of that stamped upon it by the testator. From the time of Roper v. Radcliffe, 9 Mod. 170, it has been settled, that the land devised to be sold, is money to pay specific legatees; it is otherwise as to the heir or residuary legatee. Cruse v. Barley, 3 P. Wms. 20; Attorney General v. Lord Weymouth, Amb. 20; Walker v. Denne, 2 Ves. Jr. 170; Emblyn v. Freeman, Prec. Ch. 541; 1 Brown, Ch. 503. The intention of the testator must be, to make the conversion out and out, to all intents and purposes, or the part which is not effectually disposed of will result to the heir. 3 P. Wms. 22, note; 1 Rop. Leg. 351. So where there is a surplus, after answering the particular purposes of the will, and there is a general bequest of the personal estate, the proceeds of land go as land. Rop. Leg. 352, 355. This is the case now before the court. Blending the real and personal estate will not make land money, if done for special purposes, unless such is the clear intent. 1 Rop. Leg. 356. Nor will such intent be presumed but for the purposes expressed. 1 Rop. Leg. 360, and cases cited. When such purposes fail, the disappointed fund goes to the heir. Rop. Leg. 363, 367; 10 Ves. 500. So of a lapsed legacy to be paid out of realty. Rop. Leg. 362.

In this case, the share of Mrs. Stockton was realty at her death, and as such, passed to the complainants as her heir, before it could become personalty consistently with the will, which impressed it with the character of land when the right of the heir attached. It could not come to the legatees as money, till 1830, and then the testator gave it to the specific legatees with the evident intention that it should not go out of the family. This was not a case where Mrs. Stockton could make an election before 1830, because she died before the land could be converted, which is conclusive to show that it was not and could not be money. She might have elected after 1830 by the aid of a court of equity. 1 Rop. Leg. 372. There was no mode by which the residuary legacy could have been recovered before 1830; it could by no possibility be reduced into possession by the husband after her death, and no right passed to him, as the interest she held was in the land. In Reading v. Blackwell [Case No. 11,612], the contest was between the specific and residuary legatees, both claiming under the will; here it is between the heir of the legatee and a stranger, who claims out of the will, as to whom there was no vested interest in the fund, because there was a physical impossibility that it could be money at her death, and he could have no pretence to it as land. Whatever therefore may be the law as to the husband's right to his wife's property, in possession or action, he could have none in this legacy, because it could not have been reduced into possession in her or his lifetime. It was no debt or right which either could have assigned, or which creditors could take.

Mr. Green and Mr. Wall, for respondent.

In Reading v. Blackwell [Case No. 11,612], this will was held to give a vested interest to the residuary legatees; and that the fund was to be taken as money, on the authority of Craig v. Leslie [3 Wheat. (16 U. S.) 563]. As Mrs. Stockton died intestate, her legacy must go according to the statute of distributions, and its construction in England and this state, which has adopted the statute of 22, 23, & 29 Car. II. (Rev. Code 179, § 15). This legacy was the personal property of the wife, on which the husband had a right to administer (4 Coke, 51; Co. Litt. 351a, note 304); to recover and to receive to his own use without accountability; or he might sue for it in her lifetime, as soon as it became payable, by the terms of the will, the postponement of which does not affect his right in the legacy (Toll. Ex'rs, 224, 225). If he dies without administering, it goes to his representatives, and not her next of kin; and an administrator on her estate is trustee for the husband, whether it is in possession or action; he or his representatives take it absolutely (1 P. Wms. 378, 381; 1 Atk. 458; 3 Atk. 526; 1 Wils. 168; 6 Johns. 112, 117; 5 Johns. Ch. 206; 7 Johns. Ch. 244; 2 Conn. 564); he being considered the next friend and nearest relation. He administers in jure mariti, and holds by the construction of the statute as

next and nearest relation within its equity. 2 Vern. 302; 1 Ves. Sr. 15; 11 Vin. Abr. 88, pl. 25, 26; 2 Eq. Cas. Abr, 423, pl. 7; Toll. Ex'rs, 83, 84. In New Jersey he administers on her estate without giving a bond. Rev. Code 177, § 11. And in the case of Fairly v. Kline, 2 Penning. 758 [3 N. J. Law] the supreme court held that the husband was entitled to the proceeds of land sold in which his wife had a vested interest, though she died before the land was or could be sold, which decision has never been questioned in this state, and is conclusive on this point.

The rule of courts of equity in relation to land directed to be sold, is to effectuate the intention of the testator, which is manifest in this case; he disposes of the whole estate as money, no part is in any contingency to go as land, the legatees are put on the same footing, they all take vested interests, which can, in no event provided for, lapse, or fall into the residuum of the estate. He makes the complainant's wife a legatee, which denotes the extent of the provision intended for her; the legacies are not carried on beyond the first takers, in whom they vest absolutely in interest and in possession, immediately on the sale; leaving the legacies transmissible, according to the course of the law, to the representatives of the legatees, in the same manner as if they had died in possession. There are qualifications of the rule, but the complainants come within none of them; the cases referred to are of lapsed legacies, which result to the heir on the principle that his right shall not be affected, unless there is a plain intent expressed in the will to do it. They can have no application here, because complainant claims, not as heir of the testator, but of Sarah Stockton, and as her next of kin. Both parties claim under her, each claiming the interest which was vested in her; neither can recover if it was contingent, and lapsed by her death before the maturity of James H. White. As this contingency applied only to the time of paying the legacy, for the benefit of the estate, without any reference to the character or condition of the legatees, nothing could intervene to prevent the legacies from vesting in possession. This brings the case within the universal rule laid down in [Craig v. Leslie] 3 Wheat. [16 U. S.] 577, 578, that land directed to be sold is, in equity, money from the death of the testator, whether sold or not. The same rule has been adopted in this state, where a life estate was given in the land, and the distributee died before the tenant for life, and before the land could be sold; it was held that the land was money, and passed as such. 2 Pen. & W. 754. This case is the stronger, as the distribution was unequal and arbitrary, wholly inconsistent with the intention of dividing it as land, among tenants in common. The inheritance was destroyed for the purpose of creating a residuary fund, composed of the proceeds of the sales together with the rents and profits previously accrued. This fund, with all the residue of his estate, of whatever kind, is given to the residuary legatees, and so far from intending any thing to his heir as land, he makes a contingent provision for him out of the fund to be raised by the sale. The testator also directs the whole real estate to be sold, and the proceeds to be applied to the execution of his will, which stamps it with the character of personalty. Mrs. Stockton had no right of election, or if she had, did not exercise it; thus leaving her right to descend according to the directions of the will, and with all legal consequences. 3 Wheat. [16 U. S.] 582, 583 [supra]; 2 Ves. Sr. 174, 176; 2 Atk. 373; 3 Ves. 49; 13 Ves. 338; 7 Ves. 280; 19 Ves. 111. It is immaterial whether the land is sold or not; it is money though a devisee is living on it. 3 Ves. 49. It must be considered as sold, the money paid over, and the fund is liable to the legacy duty. 1 Brown, Ch. 503; 1 Price, 426. No case supports the position, that where the land cannot be sold on account of some particular estate having been devised, or other event, it cannot be considered as money until there could be a sale. The court always looks to the final object to be effected, if that requires an ultimate conversion into money, and the fund is made distributable, as the proceeds of the land, it has never been considered as land. Here the testator has directed a conversion out and out, of his whole real estate, and his entire disposition of the proceeds must be defeated, if such conversion is not deemed to have been made from the time of his death.

BALDWIN, Circuit Justice. This case turns on the question, whether the two legacies, one specific and the other residuary, bequeathed to Mrs. Stockton by the will of Mr. Harrison, are now payable to the representatives of her husband, or her heirs and next of kin. In the case of Reading v. Blackwell [Case No. 11,612], decided at the last April term of the circuit court for the Eastern district of Pennsylvania, it was held, that all the legacies vested at the death of the testator, and did not lapse by the death of any of them, before the time of distribution and payment. It is not the interest of either party to question this construction of the will, as they both claim in virtue of a right vested in her, which, by her death, has devolved on one of them; the representatives of Mr. Stockton can claim in no other way, nor can the complainant claim in the right of his wife by substitution. This could only be done if the bequest to Mrs. Stockton had failed of taking effect, and the words of the will had shown, or justified the inference, that the testator had in such event, intended to substitute the heir, or next of kin of Mrs. Stockton. 1 Rop. Leg. 337–339, and cases cited. We can perceive no such intention in any way manifested in this will, and feel bound to give it the same construction between the parties to the present suit, as was given in Reading v. Blackwell [supra].

Considering the interest of Mrs. Stockton as vested, and transmissible to her legal representatives, the next question is whether it was land or money at the time of her death. The directions of the will are very positive, to sell the whole of his real estate, and to make the proceeds a personal fund for the purposes of his will; it creates no trust in favour of any person as devisee of real estate, the profits arising before a sale are specifically appropriated to the payment of debts, legacies, and an annuity to his son. When sold, the proceeds are to be carried to the residuary fund, after paying the special legacies, which fund is appropriated as a surplus of the proceeds of the real estate, one half to his son, if he was alive and returned home before the period appointed for the sale; the other half to be divided among the nine residuary legatees, in proportion to their specific legacies. The time of the sale is fixed, the direction to sell is absolute, the only contingency on which it depends is as to time; so that no event can occur or intervene to prevent the distribution of the proceeds among the residuary legatees, as tenants in common. This disposition requires the application of the whole estate in a manner so utterly inconsistent with a division of real property, as leaves no doubt of the testator's intention to make an "out and out" conversion of his real estate into personalty, for the purpose of distribution, in the very special manner directed. No contingency is provided for in the will, which refers to a reconversion of this residuary fund into land, for the benefit of any person named in the will, or the heir of any legatee, or of the testator; the contrary intent is most manifest. As there are no words of limitation to the devise of this fund, it would pass only a life estate to the distributees as real estate; whereas as money they take it absolutely, and take it in the character which the testator has impressed upon it, by disposing of it as "a residuary fund;" "the proceeds of the sale of the land," "the surplus;" the sums directed to be taken from it, he calls "legacies," and the distributees "legatees," without one word which would be applicable to it as real estate. These provisions of the will bring this case within the well settled principles of courts of equity, which are very correctly laid down by Mr. Roper, in his very valuable work, from the adjudged cases referred to in 1 Rop. Leg. 341, 352, 356, 358, 364, 365, 369, 372, 373. These cases fully establish the rule, that land directed to be converted into money, is in equity to be considered as money, for all the purposes of the will. [Craig v. Leslie] 3 Wheat. [16 U. S.] 564, 577.

The counsel for the complainants consider this case as an exception to the rule, because the testator has postponed the sale of the New York estate to the maturity of James H. White, an event which could not happen till March, 1830; that therefore Mrs. Stockton having died before there could be any actual conversion of land into money, had a vested interest only in the land, which passed on her death to her heir, and not to her personal or legal representatives. This construction, it is said, would meet at the purposes of the will, so far as they related to her, or the interest devised to her. But these purposes must be ascertained by looking at what the permanent and final objects to be effected were; if these require an out and out conversion of the estate into money, the court must overlook such as are temporary, which do not require, or even forbid, such conversion for a specified time. This discrimination is most carefully made by the testator, by directing a special application of the rents accruing till the period of sale arrives, and then making a final and absolute appropriation of the proceeds, as a fund to be created by the sale, which became indispensable to its distribution, in the manner directed. This can only be done by considering the New York estate as money, for all the purposes of final distribution, so as to give Mrs. Stockton a right to her proportion of the ninth part of the residuary fund, vested in interest, but the payment postponed till the sale, and transmissible as personal property. Had she lived she must have received it as such, and whoever is entitled to it, must take it as she would have done. Her death before the time of payment, during the continuance of a life estate, or other temporary disposition of the land, will have no effect on its character; it will be considered as money from the death of the testator, when the direction for a sale is absolute, and the proceeds disposed of as money. 1 Rop. Leg. 369; Smith v. Claxton, 4 Madd. 484; Fletcher v. Ashburner [1 Brown, Ch. 497]. It is deemed unnecessary to review the decisions of the English courts of equity on this subject, as the supreme court of the United States have examined it fully, and settled the law in the case of Craig v. Leslie, 3 Wheat. [16 U. S.] 564, 577. Land was devised to trustees to sell, and pay the proceeds to the testator's brother, residing in Scotland; the land lay in Virginia, where an alien could not hold real estate by devise, but could take and hold personal property. The trustees refused to sell; but on a bill filed by the brother it was held, that it was a bequest of money; the court ordered a sale, and the proceeds to be paid to him, affirming the rule universally to be, "That land directed to be sold and turned into money, and money directed to be employed in the purchase of land, are to be considered as that species of property into which they are directed to be converted, and this in whatever manner the direction is given. The principle on which the doctrine is founded, regarding substance and not the forms, considers the thing directed to be done as done, where nothing has intervened to prevent it." To this rule there are qualifications. Where the person for whose use the land is to be sold elects to hold it, he may do so, but he must make the election in fact, and in his lifetime; the

right to make the election does not change the character of the property, which passes to the persons entitled, in the same manner as if the conversion had been made in the lifetime of the first cestui que trust. So where all the purposes of the conversion are effected, or some of the devises cannot take effect, there is a resulting trust for the heir at law, "as the old use not disposed of." So where the residuary legatee is the cestui que trust of the whole beneficial interest in the money to arise from the sale of the land, he has the same right of election, and resulting trust. [Craig v. Leslie] 3 Wheat. [16 U. S.] 577, 585. But none of these qualifications apply to the present case. Sarah Stockton did not make the election, the purposes of the will require the application of the whole fund, every bequest has taken effect, there is no use not disposed of, and she was not the cestui que trust of the whole beneficial interest, but only of her proportionate ninth part. The counsel for the complainant have considered, that the rule laid down in the third proposition in Roper v. Radcliffe, 9 Mod. 170, 171, "that in respect to the residuary legatee, such a devise shall be deemed as land, in equity, though in respect to the creditors and specific legatees, it is deemed as money," is to be taken as a settled principle. But it is expressly overruled in Craig v. Leslie, unless the residuary legatee has made an election in his lifetime. 3 Wheat. [16 U. S.] 585, 586.

The same principles have been affirmed by the supreme court of this state in Fairly v. Kline, 2 Penning. 754 [3 N. J. Law]. In that case the testator devised his homestead to his wife for life, or widowhood; on her death or marriage he directed his son to sell it, and divide the money arising from the sale among his eight children, whom he named, among whom was the wife of the plaintiff. The testator died in 1785, leaving his widow and eight children alive, the plaintiff's wife died in 1792, leaving five children and her husband, who administered on her estate, the land was sold by consent of all parties in 1797, the widow died in 1801. It was held that the plaintiff's wife took a vested interest in the fund, as personal property, which passed to her representatives.

We feel bound by the authority of these cases, the first was decided by a court by whom our decisions may be revised, the other by a court whose decisions settle the rules of real property in this state, which must be respected as the local law governing the case. [Jackson v. Chew] 12 Wheat. [25 U. S.] 161, 162. The interest of Mrs. Stockton must therefore be considered as personal property, the only remaining question is, whether on her death, it passed to her husband, or next of kin. By the common and statute law of England, the husband who survives his wife, becomes entitled to administer on her estate, and to take to himself all her personal property in action as well as possession. If he dies before he has administered, or before he

has completed the administration of her estate, and the next of kin to the wife administers, they are trustees for his representatives. 7 Johns. Ch. 244, and cases cited. Whether he succeeds to her property jure mariti, or as her next of kin, is not material. He is next of kin by relation of marriage, and takes in consequence of being her husband, and by reason of that relation. 7 Johns. Ch. 246, 247. Such is the rule under the English statutes of distribution, which have been adopted in this state. Rev. Laws, 174, 179. This rule was followed in Fairly v. Kline [2 Penning. 754], where the money was adjudged to be payable to the husband in his own right. The only difference between that case and this is, the death of the husband; but as all his rights devolve on his personal representative, that circumstance has no effect upon the case.

The bill of the complainant must be dismissed.