Judge Caiir:
This controversy arose out of two suits in the Chancery Court. Webb, executor of Jeffries, filed a bill against Joseph Fauntleroy, administrator de bonis non of Griff n Fauntleroy$ who had been the guardian of Elizabeth, the wife of Jeffries. The bill states, that Elizabeth inherited a considerable fortune from her father, Robert Chinn: that Griffin Fauntleroy, as her guardian, received her property: that Jeffries married her while an infant: that she died, and, subsequently, her husband also, without administering on her estate, and without any settlement of the guardianship: that Joseph Fauntleroy, the administrator, had removed from the State; and that one Northern, a resident, owed him a sum sufficient to discharge what would be found due from his intestate, as guardian. It prayed a settlement and decree. The other bill was filed by JLlderson and his wife, she being another daughter of Robert Chinn, having the same guardian. It states the same case, makes the same parties, and prays the same relief. The suits were proceeded in jointly, as having but one object. „ Reports were taken and confirmed, both as to the guardian’s account, and the debt due from the resident defendant to the absentee. Northern *439 died in the progress of the suits, and they were renewed against his administrators, Yeatman and Templemcm. Finally, the Court decreed against the absent defendant, Fauntleroy, 52l. 17, 1, in favor of the plaintiff, Webb; and against the said defendant, 44l. 13, It, in favor of ¿líderson and wife. In these decrees, all parties acquiesced; but the Court went on, and decreed, in favor of Fauntleroy against Templeman, one of Northern’s administrators, the sum of $1815 08 cts.; and it is from this decree that the appeal is taken.
The first point taken for the appellant in the argument, was, that Webb, as administrator of Jeffries, could not maintain this action, as Jeffries had never administered on his wife’s estate. This objection applies solely to the case of W2bb. If we were, therefore, to say that Webb could not sue, how would this affect the decree as to Jllderson and wife, or as to the appellant Temjileman, which stands on ground wholly distinct ? If it were necessary to decide the point, I should doubt, considerably, the correctness of the position taken by the appellant’s counsel; especially in such a case as this, where the feme married in her infancy, and there is no suggestion by the defendant of her having contracted debts; that being the only reason' why a husband need, in any case, administer. Hendren v. Colgin, 4 Munf. 231. There is a direct and high authority, that the executor of the husband, who had not administered, may sue in equity. This is laid down by Lord Hardwicke, in Elliot v. Collier, reported in 1 Wils. 168; 3 Atk. 526, and 1 Ves. 15. The case is also mentioned as of authority, in 7 Johns. Ch. Rep. 229, and cited by Judge Tucker, in Chichester v. Vass, 1 Munf. 98, as authorising Fuss’s administrator, in that case, to sue.
But it is not necessary to decide this point, for the reason already given; and for the still more conclusive reason, that this appeal does not bring it before us. The question existed between Webb and Fauntleroy, and was settled by the Court of Chancery, in the decree between them, *440 from which there is no appeal. Webb is no party to the case before this Court. The appeal is taken by Temple-man, from the decree for Fauntleroy against him. The supersedeas which issued to stay proceedings, is limited to the decree between them; leaving Webb’s decree in full force, which he might forthwith carry into execution.
The only questions which this record presents, relate to the decree between the co-defendants. Could the Court, in a case like this, of foreign attachment, render any decree between them ? First, let us examine what kind of a proceeding this is. The statute speaks of it, as a “suit for relief in equity,” “by bill.” The defendant is to appear and give security for performing the decree. The Court are to take such proof as the complainant shall offer, &c. They may order the bill to be taken for confessed make such order or decree as shall seem just, and enforce it by such means as have been heretofore used for enforcing decrees. These, phrases certainly clothe it in the garb, and give it the features of a proceeding in equity; and yet we know that it is often applied to cases purely legal; as, if an absentee owes me a debt by bond, and has a debtor within the State, I may file a bill, and get a decree. In such case, if the absentee were to appear, I presume he might avail himself of any legal defence. And this seems to have been the opinion of the Federal Court, in Wilson v. Koontz, 7 Cranch. 202. That was an attachment in Chancery upon a note. The absentee appeared, gave security, and discharged the attached effects; and pleaded the statute of limitations. There was a replication and judgment for defendant. On the appeal it was objected that the plea alone was insufficient; there should have been an answer also, denying the debt. The Chief Justice says, that objection ought to have been made before issue; but he adds, “ if it be a good objection in cases within the general jurisdiction of a Court of Equity, yet it is not valid in a case like the present, which is really a case at law between the present *441 parties.” I apprehend the correct rule to be this, that when a case, purely legal, is the subject of a foreign attachment, it will be considered substantially a legal proceeding, and conducted on legal principles. But where, in its nature, the case properly belongs to a Court of Equity, all the equitable rules and principles will attach to, and govern it. If this be the correct standard, there can be no difficulty in assigning the case before us to its proper forum. It is emphatically a case for equity; a call by the representative of a ward, on the representative of a guardian, to render an account of the guardianship. If Faunlleroy had resided in Virginia, this must have been a suit in equity. His removal certainly cannot make it less so; but that removal gives the plaintiffs a right to add the defendant Northern; and thus, incidentally, gives the Court cognizance of the debt said to be clue from him to Fauntleroy. If, when Fuuntleroy appeared, he had given security to perform the decree, the attachment would have been discharged, and the case have proceeded upon the subject of the guardianship alone. But no bond and security being given, the plaintiffs had a right still to retain the garnishee in Court; and the Court continued to have both the subjects before them. I think, therefore, we may call this a regular suit in equity, against both defendants, and subject to all equitable rules and principles.
That equity may decree between co-defendants “is a jurisdiction,” (says Lord Redesdale, 2 Sch. & Lefr. 698) “long settled and acted on, and the constant practice of a Court of Equity; so much so, that it is unnecessary to state any case in its support.” In the same case (Chamley v. Dunsanny, &c. an appeal from Ireland to the House of Lords) Lord Eldon says, “It is said that a decree is made between defendants, and that such is contrary to tne practice of a Court of Equity, because there cannot, be a cross-examination between co-defendants. But, my Lords, where a case is made out between defendants, by evidence arising from pleadings and proofs between plaintiffs and defen *442 dants, a Court of Equity is entitled to make a decree between defendants. Further, my Lords, a Court of Equity is bound to do so. The defendant chargeable, has a right to do so. The defendant chargeable, has a right to insist that he shall not be liable to be made a defendant, in another suit for the same matter, that may be then decided between himself and his co-defendant; and the co-defendant may insist, that he shall not be obliged to institute another suit, for a matter that may be then adjusted between the defendants. And if a Court of Equity refused so to decree, it would be good cause of appeal by either defendant.”
The general power, then, to decree between defendants, is clear, with this qualification, that the case must be made out by evidence arising from the pleadings and proofs between plaintiffs and defendants. Let us see whether the case was thus made out here.
The plaintiffs charged that Fauntleroy was indebted to them,—was an absentee,—and that Northern was indebted to Fauntleroy. They called on the defendants to answer the allegations of the bills. ' Fauntleroy answers as to the guardianship, putting that matter in issue. The administrators of Northern answer, confessing that their intestate owed money to Fauntleroy: that the amount would depend, in some degree, on a contest about a part of the land: that they are willing to account and pay, as they shall be ordered. Could the Court have decreed against the administrators, upon this answer, the amount due from Fauntleroy to the plaintiffs? Certainly not. They do not state the sum due; they say it is uncertain, and that they are willing to account. Here then, the pleadings between the plaintiffs and these administrators, rendered it necessary to order an account, to ascertain how much their intestate owed Fauntleroy. If, when the case was before the commissioner, the administrators had come in and said, “we do not wish to descend to particulars, but we acknowledge before you, that our intestate owes Fauntleroy *443 enough to discharge the claims of the plaintiffs;” the commissioner might have reported this fact generally. 13ut instead of that, the administrators themselves furnish to the commissioner, from the books of their intestate, every Item, on which his report, ascertaining their debt to Fauntleroy, is founded. He reports that debt to be #1815 68 cts. There is no exception to this report. Indeed there could not be. Thus is the ease between the defendants fully made out, by evidence arising from the pleadings and proofs between plaintiffs and defendants. If it had happened that the debts established by the plaintiffs against Fauntleroy, had been equal to the debt found due from Northern’s estate to Fauntleroy, there would have been, there could have been, no objection to a decree against the administrators for the whole debt. And can it make any difference to them, whether they are decreed to pay Ibis debt to the plaintiffs, or to Fauntleroy. A payment to either, will equally discharge the debt. Are they not, in duty to the estate, bound to insist, that an end shall be made of the matter in this suit: that the debt being ascertained, and the expenses of a suit incurred, there shall be a decree for the whole, and not for so much only, as may be found due from Fauntleroy to the plaintiffs; leaving the estate of their intestate liable to be harassed and wasted by the costs of another suit, by Fauntleroy, for the balance due him? And ought the Court to leave for future litigation, a matter thus fully and fairly settled ? The ease seems to me to he directly within the principio so strongly laid down by Lord Eldon.
It is objected next, that this is a decree, not only between co-defendants, but also between the administrators of Northern. I do not consider this a decree for one of those administrators against the other. In every decree against executors and administrators, the Court will be governed by the amount of assets in the hands of each. If it shall appear that one administrator has all the assets, the decree will be against him, for he has the fund. *444 Whether, in this case, the Court were justified in renderjng a decree for the whole debt, against Templeman, we will proceed to enquire.
The answer purports to be the joint answer of the administrators; but we find it sworn to by Templeman alone. Itv acknowledges assets, a willingness to pay the debt really due, and to account. In the order of reference to the master, to ascertain what sum the administrators owed Fountleroy, when the restraining order was served, he is authorised-to examine them on oath. It is a rule of equity, long and well settled, that in a reference to a master, the Court may direct the examination of the parties on oath'. Cowslade v. Cornish, 2. Ves. 270; Kirkpatrick v. Love, Ambl. 589; 3 P. Wms. 288; Purcel v. M' Namara, 17 Ves. 439; Hart v. Ten Eyck, 2 Johns. Ch. Rep. 513. The practice is founded in that pervading principle and distinctive feature of equity, an appeal to the conscience of the party. “ Every defendant,” (says Chancellor Kent, ubi supra,) “notwithstanding his interest, must, in the first place, answer the bill; and, having thus answered, as a party, it is said that he shall not be examined in chief, -in the character of a mere, witness. But when a reference is ordered upon hearing, then the enquiry becomes necessarily minute, and a new and more detailed investigation is opened, to which the general enquiries in the bill, are not adapted. Here the same policy and principles of the Court, which required an answer to the bill, apply, and call again upon the conscience of the party, as party, for a further disclosure, adapted to' the minutiae of the enquiry. The same reasons which required an answer in the first instance, require an examination in the second.” In these remarks, I entirely concur. A reference in such cases, with the order for examining the defendant, has the effect of a supplemental bill of discovery, and the examination, the effect, (I conceive,) of an answer to that bill. Standing on the same ground, it must be governed by the same rules. If, where it makes against *445 the defendant, it is evidence; where it makes in his favor, he may avail himself of it. Recollecting these positions, let us look at the proceedings of the master, under the order for examining the administrators. lie gave them notice of the order, and repeated notices to attend at his fice. Templeman never would attend; though in his letter, he acknowledges notice. This was a contempt of the order of Court; and, taken in connexion with his answer acknowledging assets, and his letter speaking of the bonds, authorises the conclusion strongly, that he refused to attend from a consciousness that he must, on oath, have stated before the commissioner, that the assets were in his hands. Yeatman, under the notice to him, attended and submitted to be examined. In his answers to the different interrogatories put, he stated the amount due to Faunlleroy, as taken from Northern’s books; and also, the following facts: that the estate of Northern was settled, and the settlement returned to Court, prior to 1814: that in this settlement, there was reserved about $2000 in bonds, to meet this debt of Fauntleroy’s, the bonds being those taken by the administrators, on the sale of the personal estate: that being about to remove to Fauquier in 1814, he turned over all these funds to his co-administrator: that at the service of the restraining order, he had notin his hands any of the funds, nor has he had at any time since: that the answer, purporting to be joint, was filed by Temple-man alone, after his removal, and had never been seen by him, till the day before his examination. Upon the principles laid down, I think the Court below were authorised, from these facts, to conclude that the answer was the sole answer of Templeman; and that Yeatman had none of the assets in his hands, at the service of the restraining order. The decree, therefore, was rightly made against Templeman alone.
But, were the Court right in decreeing de bonispropriis? Clearly, I think. It is a settled rule in equity, that wherever a balance is found in the hands of an execu *446 tor or administrator, the decree shall be de bonis propriis; and in Moore's ex’x. v. Ferguson and al. 2 Munf. 421, and Sheppard's ex’r. v. Starke, 3 Munf. 29, the decreés were reversed, because, under such circumstances, they were de bonis testatoris. Now, here Templeman acknowledges assets. The bonds had been due eight years, were taken to the administrators themselves, no suggestion that any of them had failed or were uncollected; but an unqualified admission of assets, and a readiness to pay, when ordered. Surely this was equal to a report, stating assets.
It was said that this acknowledgment of assets by Templeman, was an admission that he had assets to pay the demands of the plaintiffs, not the whole debt of Fauntleroy. But this is a palpable mistake. The answer was filed in 1815, and the report of the commissioner, stating the balances due the plaintiffs, was not taken until 1818, and before this report, it was perfectly uncertain what those balances would be, as they depended on the settlement of two guardianships. Besides, the answer expressly states, that with respect to the debt from Fauntleroy, they know nothing. It also confesses, that there is a debt due from the estate to Fauntleroy, and that they are willing to account and pay it; referring necessarily to this debt.
The last objection to the decree is, that it gives interest, while the money was staid in the party’s hands, and it would have been a contempt to have paid it out. I have examined the case of Tazewell's ex’r. v. Barrett & Co., 4 Hen. & Munf. 259, and think the principle decided there, directly applicable to the present question. Tazewell owed money to Bland, by bond. He was served with a subpoena on behalf of Bland?s executors, attaching this money in his hands. After this service, he received notice that the bond had been assigned. An order of Court was subsequently served on him, to restrain him from paying the money, till further order. It was 5 or 6 *447 years before this order was discharged; and in a suit by the assignees of the bond, the question was, whether, during this lime, Tazewell should pay interest. The Court decided that he should. Judge Roane considered the prilleiple as settled by Hunter v. Spotswood, 1 Wash. 145, where a sheriff sold attached effects, under an order of Court, directing him to pay the money to Hunter, on his giving security; whicli he failing to do, the money re» mained, and, it was said, died in the sheriff’s hands by depreciation. Yet he was decreed to pay interest. In all such cases, I think the safe and sound doctrine is, that if the party, though restrained from paying, holds and uses the money, (and we must presume he uses, if he continues to hold it,) he ought to pay interest; because the owner of the debt has a right to the interest; because money is worth its interest; and if the holder does not think so, he has always the privilege of bringing the money into Court: and because, if the debtor could, under this restraining process, hold the debt for years, without interest, it would offer a strong temptation to him, to stir up claims of this kind, and to throw all possible obstacles in the way of a decision of the questions raised.
Judges Coaltek and Cabell, concurred, and the decree was affirmed.*

 Judges Brooke and Greeit, absent, the latter of whom decided tho case in the Court below.