## Jos. CAIN and others, *vs.* RICH'D C. WARFORD.

Where there is no dispute in regard to the facts, and nothing but a purely legal question to be determined, it is not incumbent on the orphans court to order a plenary proceeding.

The 16th and 17th sections of the act of 1798, ch. 101, sub-ch. 15, only relate to applications, where there are matters properly in issue between the parties, and not to cases where there is no dispute in regard to the facts.

A *caveat* was filed to a will, and upon application of the party who was admitted to be the executor and largest legatee of the personalty under the will, he was appointed by the orphans court administrator, *pendente lite.* HELD:

This appointment was resisted by other parties, on the ground that the estate was not in danger, being under charge of a receiver previously appointed by the court of chancery; they also recommended another person as such administrator.

That by the act of 1810, ch. 34, sec. 6, the orphans court had full power to make this appointment, and the eligibility of the party being admitted, the exercise of its discretion by said court must determine the matter.

The death of a lunatic determines the office of the committee; and the court of chancery will order the personal estate to be paid over to the representatives of the deceased.

APPEAL from the Orphans Court for Baltimore city.

This appeal was taken by the appellants from two orders of the court below, the *first* of which dismissed the petition of the appellants, asking said court to direct plenary proceedings in the application of Richard C. Warford, (the appellee,) for letters of administration *pendente lite,* on the personal estate of Rachel Colvin, deceased; the *second* appointed, on his application, the said Warford such administrator, it being admitted that he was the executor and principal legatee named in the will of said Rachel, to which a *caveat* had been filed. The facts of the case are fully stated in the opinion of this court.

A motion to dismiss was made on the grounds :—1st, because it is a matter of discretion determinable by the orphans court, whether, in a particular case, letters of administration, *pendente lite,* should be granted or not, and to appoint either the person named as executor in the contested will, or

the largest legatee of the personal estate, or the person who would be entitled to letters of administration in case of intestacy, and having done this, their action is not a subject of review by this court; 2nd, because there was no such contest in the orphans court between the appellants and the appellee as rendered a plenary proceeding necessary or proper. This motion was argued with the questions upon the merits.

The cause was argued before Le Grand, C. J., Eccleston and Mason, J.

*Grafton L. Dulany* for the appellant.

1st. The orphans court had no jurisdiction to appoint an administrator, *ad colligendum*, because the court of chancery had previously assumed the management, care and preservation of the estate by the appointment of a receiver, *pendente lite*. There is nothing *imperative* in the act of 1798, ch. 101, sub-ch. 3, requiring the orphans court to appoint such administrator; they are to do it in their discretion, but this discretion will never be exercised except upon a case properly made out. Here the fact was made known, that a court of equity had appointed a receiver to take charge of this estate, and yet an administrator, *ad colligendum*, is appointed for the very same purpose. The general power of a court of chancery to take possession, by a receiver, in case of a contested will, is clear. 6 *Ves.*, 172. 1 *Ves. and Bea.*, 544. *Shelford on Lunacy*, 2 *Law Lib.*, 199. Administrators, *pendente lite*, are like receivers; their power is identical, and the orphans court may grant such letters or chancery may appoint a receiver. 1 *Wms. on Ex'rs*, 409. Wherever there is concurrent jurisdiction, the court which first gets possession of the case will be entitled to retain it. 7 *Gill*, 484, 486, *Albert and wife vs. Winn and Ross.*

2nd. But suppose the orphans court had jurisdiction, it ought not, upon the facts of this case, to have been exercised. By the act of 1810, ch. 34, the granting of letters *pendente lite* is left to the *discretion* of the orphans court; they are not *com-*

*pelled* to do so; there must be a case made proper to act upon; this is a sound discretion to be governed by fixed principles of law, not an arbitrary one. If the estate is safe, if it will be preserved until the dispute is ended, the effect of granting letters *pendente lite*, would be to burden it with heavy expenses. 2 *Eng. Eccl. Rep.*, 122. The fact that a receiver was appointed may be called in to show that the estate requires some one to control it, but then the question recurs, is it *safe* in the hands to which it is entrusted? The very fact that a receiver has been appointed, is the best reason why letters *pendente lite* should not be granted.

3rd. There was error, also, in refusing to direct the plenary proceedings, as prayed by the appellants. The right to these proceedings is founded on the 16th and 17th sections of the act of 1798, ch. 101, sub-ch. 15. The word *"may,"* in these sections, must be construed *"shall."* It is the right of the party, therefore, to have a plenary proceeding directed, whenever there is a *contest*, and the court is bound to grant it. 5 *H. & J.*, 175. This right is not confined to cases where issues are required or a *caveat* filed, but it extends to all cases where there is a dispute.

4th. There was error in appointing the appellee against the recommendation of a majority in interest, and also in the refusal to appoint Elisha Warford, who had such recommendation. 1 *Eng. Eccl. Rep.*, 60. 5 *Do.*, 371. 6 *Do.*, 145, 218, 244.

As to the right of appeal, it is clearly given by the act of 1818, ch. 204.

*Wm. Schley* for the appellee.

1st. On the motion to dismiss. The petition of the appellee presented a case of a pending controversy, which clearly authorised the court to appoint an administrator *pendente lite*, under the act of 1810, ch. 34. The language of that act is "that *in all* cases where the validity of a will is or shall be contested," &c. There are but three grounds of error that can be taken by the appellants:—1st, the refusal to grant the plenary proceedings; 2nd, the appointment of the appellee; and 3rd, the refusal to appoint Elisha Warford.

Cain, *et al.*, *vs.* Warford.

A plenary proceeding will not be granted when the question is purely one of law. 5 *Gill*, 204, 206, *Smith and wife vs. Young*. The 20th section of the act of 1798, ch. 101, sub-ch. 8, prescribes the mode of trying issues on plenary proceedings. But what in this case is to be decided by a jury? The sole question is, whether the appointment of a receiver by the chancellor prevented the orphans court from acting? This is a pure question of law. The appointment of a receiver is only until the orphans court acts. 8 *G. & J.*, 226. Such was the opinion of the chancellor here. What then is the use of issues? What is to be tried? The facts are all admitted, there is no dispute about them. Again, there is no conflict of jurisdiction here; the orphans court has general power over the subject, the chancery court only ancillary jurisdiction until the former acts. The *administrator pendente lite* is not a mere collector, but is, to all intents *administrator* pending the controversy. We therefore insist upon the motion to dismiss.

2nd. Upon the merits. 1st. There being no question as to the eligibility of the appellee, the act of the court appointing him, is the act of a tribunal clothed by law with *exclusive* jurisdiction over the subject matter. 3 *G. & J.*, 20, *Wilson vs. Wilson*. 2 *Gill*, 241, *Compton vs. Compton*. *Hanna vs. Munn and Placide, ante.*, 230. 2nd. Ellicott, one of the persons recommended by the appellants, was clearly ineligible, hence their application was properly refused. 8 *G. & J.*, 84, *Hoffman vs. Smith*. The right to administration cannot be delegated. 8 *Gill*, 285, *Ex-parte Young*. 3rd. There was no error in refusing the plenary proceedings. 5 *Gill*, 204, 206, *Smith and wife vs. Young*. 4th. The appellants have no right to complain, for they do not show that they would be entitled to administer in case of intestacy. They may have been relatives on the mother's side, or of the half-blood. They might be nearest of kin as to distribution, and yet not entitled to administer. *Act of* 1798, *ch. 101, sub-ch. 5, secs. 16 & 21;* and *sub-ch. 11, secs. 9 & 11.*

*Reverdy Johnson* on the same side.

The appointment of the appellee is resisted upon three

58 v.3

grounds :—1st, that his petition presents no case, because the estate was not in danger; 2nd, that the court ought to have granted plenary proceedings; and 3rd, that the orphans court had no jurisdiction, because of the appointment of a receiver by the chancellor.

1st. The act of 1810, ch. 34, gives the orphans court the power to make the appointment when there is a *contest* about the will; the parties from whom he is to be selected are either the executor, the largest legatee, or the persons entitled to administration in case of intestacy. Here the case presented was one of a contested will; the length and nature of this controversy is presumed to have been before the court below. But what is the use of evidence? The act says the letters are to be granted in *"its discretion,"* not the discretion of any one else, or any other court.

2nd. The counsel for the appellants supposes, that in every case in which there is *any contest*, of any kind whatever, about any subject whatever, there must be plenary proceedings whenever asked for by either side. There is some sort of a contest here. 1st. Is there to be an administration? This is to be decided by the orphans court in its discretion, and under the act of 1810, ch. 34. 2nd. Who is to be appointed? this is to be decided in the same way by the same act. This is the contest. Now how is it to be contested on plenary proceedings? There was no dispute as to the fact of the will; that the appellee was named as executor, and was the largest legatee, and that the other parties were the next of kin. What then was to be tried?

But to grant plenary proceedings here would make the law *a contradiction*, as I will show: It is clear, that by the act of 1810, ch. 34, *exclusive power and jurisdiction* is given to the orphans court to appoint an administrator *pendente lite*. Now the right to plenary proceedings is conferred by the 16th section of the act of 1798, ch. 101, *sub-ch.* 15, but the 17th section prescribes, that in *all cases* of plenary proceedings, issues may be framed and sent for trial. The issue then in this case would be, whether the appellee should *be appointed* administrator *pendente lite;* and *whichever* way the jury might

give their verdict on this issue, the orphans court would be *bound to decide accordingly*. Thus the result would be to deprive this court of *its discretion*, previously and in express terms given it by the act of 1810. I say, therefore, that it never could have been the design of the legislature to give the right of plenary proceedings in such a case as this.

3rd. There is nothing in the record to show, that the court of chancery has ever exercised its jurisdiction. But we contend that the chancellor had no right to appoint the receiver. 2 *Law Lib.*, 132, *Shelford on Lunacy*, *Alex. Ch. Practice*, 238, the death of the lunatic having determined the jurisdiction of chancery. But the chancellor only appointed him until the persons entitled should come forward and claim the property, and he has now passed an order directing him to pay over to the administrator *pendente lite*. But if the effect of appointing a receiver is to oust the orphans court of the power to appoint an administrator *pendente lite*, why should it not divest them of the power to appoint an administrator at all?

*Dulany* for the appellant, in reply.

1st. The first position assumed upon the other side is, that the orphans court has an absolute, exclusive and arbitrary discretion over the subject of the appointments of administrators *pendente lite*, and for this they rely upon the act of 1810, ch. 34. But there are numerous cases in which discretion, though expressly given by statute, is yet held to be a sound discretion, to the proper exercise of which the parties are entitled, and the subject of review on appeal. 12 *G. & J.*, 258. 1 *H. & G.*, 404, 407. 5 *H. & J.*, 460. 5 *G. & J.*, 64. The estate must be in danger, and this fact must be affirmatively proved before an administrator *pendente lite* will be appointed. 2 *Eccl. Rep.*, 124. There was no such averment or proof in this case. Where the court below has an absolute and exclusive jurisdiction, yet if in the exercise of it they mistake as to the law, this court will, *quoad hoc*, revise their judgment and send the case back for a proper exercise

of their discretion. Such is this case, and there is every reason why this decision should be reviewed as the exercise of a sound and not an arbitrary discretion.

2nd. There is a *fact in dispute* here, and that is, whether the estate was or was not in danger, and the act of 1798 expressly gives the right to plenary proceedings wherever there is a *contest*, without any qualification as to the character of that contest. The term party does not necessarily mean a party litigant, but any one who is injured by the order may appeal. 9 *G. & J.*, 234. The argument on the other side as to making the law a *contradiction* by granting the plenary proceedings in this case is defective in assuming, *first*, that there is no *fact to be* tried; and *secondly*, that the orphans court have an absolute, exclusive and arbitrary discretion over the subject; both of which assumptions I deny, and without these the argument fails. That these proceedings would occasion delay is an objection that cannot be taken in a court of justice. 12 *G. & J.*, 387.

3rd. As to the conflict of jurisdiction: The estate was under the control of the court of chancery, by a receiver duly appointed. The power of chancery was formerly much more ample. 37 *Law Lib.*, 62, where *Lord Eldon* doubts but that a receiver may be appointed even where there is an administrator *pendente lite*, and this doubt is strengthened by the decision in 1 *Ves. and Bea.*, 541. There is nothing in our statutes describing what an administrator *pendente lite* is, or what his character and qualifications are. For all these we must go to the English law for light. There is no case in England where a receiver has ever been directed to give up the estate to an administrator *pendente lite* subsequently appointed. If such an one can be found, I will give up the case. A court of chancery will interfere, as a matter of course, to appoint a receiver *pendente lite*. *Shelford on Lunacy*, 2 *Law Lib.*, 136, 199.

LE GRAND, C. J., delivered the opinion of this court.

This case comes before us on appeal from orders passed by the orphans court for Baltimore city.

It appears from the record, that, on the 1st day of March 1853, the appellee filed in the orphans court his application, asking to be granted letters of administration *pendente lite* on the personal estate of Rachel Colvin, deceased, stating that she had left a will, bearing date the 6th day of April 1848, and that it had been left for probate, but that a *caveat* had been filed. On the 15th of March following, the appellants filed their objection to the appointment of the appellee, because, as alleged by them, "the high court of chancery of this State has assumed the management and control of the real and personal estate of said Rachel, and has appointed Benjamin H. Ellicott receiver thereof, subject to any order in the premises which it might seem necessary or proper thereafter to pass." On the 26th day of March Elisha Warford filed his application to have himself and Benjamin H. Ellicott appointed administrators *pendente lite*, stating that the said Elisha was of the nearest of kin of the deceased, and that he represents the interest, with his own, of the majority of the nearest of kin of the deceased. This application was supported by the recommendation of the appellants, who allege themselves to be a majority in interest of those entitled to distribution. They also filed a petition, asking that the court would order and direct plenary proceedings in the matter of the petition of appellee. The court granted the prayer of the petition of the appellee, and dismissed the petition of the appellants praying an order directing plenary proceedings. It is from this action of the court that the appeal has been taken.

We see no error in the ruling of the orphans court. The person to whom the letters were granted was, admittedly, eligible to the office to which he was appointed, and we see nothing in the acts of Assembly which made it the duty of the court, under the circumstances of this case, to have directed a plenary proceeding.

It does not appear from the record how the court of chancery obtained control of the estate of the deceased, but it was conceded by counsel in argument, that it was acquired by means of a proceeding against her during her life, on the ground of mental incapacity to superintend and manage her estate. It has been

always understood that the death of the lunatic will determine the office of the committee, and the court of chancery will order the personal estate to be passed over to the representative of the deceased.   *Alexander's Ch. Prac.*, 238.

The claim set up by the appellants to an order for plenary proceedings, is founded on the 16th and 17th sections of sub-chapter 15, of the act of 1798, chapter 101.

The sixteenth section provides, that whenever either of the parties having a contest in the orphans court shall require, the said court *may* direct a plenary proceeding, by bill or petition, to which there shall be an answer; and the seventeenth section provides "in case either party shall require, the court shall direct an issue or issues to be made up and sent to any court of law," &c.

The obvious purpose of the sixteenth section is, to enable the court to advertise itself of the real facts in the case, but where there is no dispute in regard to them, as in this case, and nothing but a purely legal question to be determined, it is not incumbent on the court to order a plenary proceeding.   It could result in nothing more than what was already established. There was no dispute in the case, as to the fact that the court had assumed jurisdiction of the estate of the deceased, and the fact could not have been more distinctly placed before the court, either by the finding of a jury, or by the answer of the appellee to any petition or bill which might have been filed by the appellants, or by the appellee against them.   And this being so, we are of opinion, that the court did right in refusing to order, in conformity with the prayer of the petition.   These sections of the act of 1798 can only be supposed to relate to applications where there are matters properly in issue between the parties, and not to cases in which there is no dispute in regard to the facts of the case.   *Smith vs. Young*, 2 *Gill*, 204.

We regard the sixth section of the act of 1810, chapter 34, as vesting in the orphans court full power to appoint the appellee administrator *pendente lite*, it being admitted, that he was the executor named in the will, and the person to whom the largest portion of the personal estate was bequeathed.   When the facts

are admitted, which is the case here, the exercise of the discretion of the orphans court must determine the matter.

*Orders affirmed with costs.*