# McCARTHY v. McCARTHY.

STATUTORY CONSTRUCTION; HUSBAND AND WIFE; ADMINISTRATION;
PROBATE PRACTICE.

1. Repeals by implication are never favored and are not supposed to
   be intended except where the provisions of the prior and subse-
   quent statutes are in manifest and irreconcilable conflict, and
   then only to the extent that they do so conflict.
2. No statute is to be construed as altering the rules of the common
   law further than its words plainly import; and where the legis-
   lature makes a plain provision in regard to any subject-matter
   the courts are not at liberty to add to or extend that provision
   beyond the plain import of the words employed.
3. Upon the death of a married woman in this District intestate, her
   statutory separate personal estate goes to her husband absolutely,
   to the exclusion of her children or other next of kin, the mar-
   ried women's acts in force here being silent as to the disposition
   or devolution of the property in event of the death of the wife
   intestate.
4. The married women's acts in force in this District having conferred
   the right upon a married woman to contract in relation to her
   property, render administration upon the estate of a married
   woman necessary in order to protect creditors, and to this extent
   modifies the testamentary act of Maryland of 1798, Chap. 101, Sub-
   chap. 5, so far as it relieves a husband of an intestate wife from
   the necessity of taking out letters of administration upon her
   estate.
5. *Quære*, whether the fact that a husband is addicted to the excessive
   use of intoxicating liquors or the fact that he has been accused
   and convicted of an infamous crime will deprive him of the right
   of administration upon his deceased wife's estate.
6. It is a question of law for the court to determine whether there
   are any facts warranting the framing of issues in the Orphans'
   Court to be framed and tried by a jury upon an application for
   that purpose.

No. 1184.   Submitted May 7, 1902.   Decided June 4, 1902.

HEARING on an appeal by the children of a deceased mar-
ried woman from an order of the Supreme Court of the

District of Columbia, sitting as an Orphans' Court, granting letters of administration to the husband of the decedent.
*Affirmed.*

The COURT in the opinion stated the case as follows:

This appeal is brought here from the Supreme Court of the District of Columbia, taken from an order passed at a special term of that court, sitting for the transaction of Orphans' Court business. The question involved is as to the right to administer upon the personal estate of Mary T. McCarthy, deceased.

The record shows that Mary T. McCarthy died, in the District of Columbia, on the 1st day of July, 1901, intestate, leaving personal estate amounting to about $4,500. She left surviving her James F. McCarthy, her husband and present appellee, and four adult children, namely, Jeremiah F. McCarthy, residing in the State of Indiana, Mary McCarthy Daley, John J. McCarthy and Katie McCarthy Brennan, residing in the District of Columbia; the three first named being the appellants in this appeal. The husband filed a petition and claimed the right to administer upon the personal estate of his deceased wife; and as surviving husband he claims that he is entitled to all the personal estate of the deceased wife after payment of her debts. This claim of the surviving husband, both as to his right to administer upon the personal estate, and his right to take such personal property as his own as surviving husband, is denied and resisted by three of the children, the present appellants; and two of them applied for the grant of letters of administration to themselves, to the exclusion of the surviving husband. It is alleged on the part of the children, denying and resisting the claim and right of the father, that the personal estate of the deceased mother, or rather that part of it consisting of the $4,425 in bank, in her name, was the sole and separate estate of the deceased, and that her children, as next of kin, are entitled thereto to the entire exclusion of the surviving husband; and that because he has no right or interest in the

personal estate of his deceased wife he has no right to administer upon her estate. The court below passed an order refusing administration to the children, and granting letters of administration to the surviving husband; and the contesting children named have appealed.

[The further material facts will be found stated in the opinion.— REPORTER.]

*Mr. Chapin Brown* for the appellants:

1. The court below erred in not directing a plenary proceeding to be had by bill or petition as required by the appellants and in refusing to frame issues to try the questions of fact in dispute between the parties.

The old law of Maryland, which was in force when these proceedings were first begun, is emphatic and mandatory and the sending of issues from the Orphans' Court for trial is a matter of right to the parties in interest which the court is not at liberty to refuse. *Pollard* v. *Mohler,* 55 Md. 284; *In re Estate of Atwood,* 2 App. D. C. 74; *Ormsby* v. *Webb,* 134 U. S. 47; *Campbell* v. *Porter,* 162 U. S. 478; *Dugan* v. *Northcutt,* 7 App. D. C. 351.

2. The court below erred in holding that the personal property of the decedent belonged to the husband, the appellee. While it is still a mooted question whether, under the law prior to the adoption of the code, the husband took all of the personal property of the wife, yet it is settled beyond any doubt that he did not take that property which had been settled upon her as her sole and separate estate, either by himself or by others. *Marshall* v. *Beall,* 6 How. (U. S.) 70; *Ward* v. *Thompson,* 6 G. & J. (Md.) 349 (Brantly's Notes); *Allen* v. *Humphreys,* 8 Prob. Div. 16. See also *Prout* v. *Roby,* 15 Wall. 472; *Jackson* v. *Jackson,* 91 U. S. 122; *Saxton* v. *Wheaton,* 8 Wall. 229; *Dorsett* v. *Marshall,* 5 Cr. C. C. 96 (in equity). Following the principles settled in these cases the facts in this case, as far as they are de-

veloped by the pleadings, show that the husband and wife conducted this saloon business jointly, the wife being the active person in the business; that with the husband's knowledge and consent the money was given to the wife and treated as hers absolutely by him during all of her life and even after her death. Under this state of the pleadings it was claimed below by the appellants that the court should frame issues to be tried by a jury to determine the question of fact whether the husband had not so settled this property upon the wife so as to make it a sole and separate estate that would pass to the children and not to the husband, at her death; but the court below, without giving an opportunity to have the evidence taken and the facts concerning these allegations as alleged in the pleadings proven, passes not only upon the law, but has assumed certain statements in the pleadings to be facts. We submit that these questions should have been submitted to a jury.

3. The court erred in appointing the appellee, the husband, administrator. It is not necessary to decide now whether the husband, as such, could or could not be appointed administrator of the wife's estate, but it is claimed that at this stage of the proceedings it was improper and illegal to appoint the husband or any other person. If it were necessary to preserve the fund, collectors could have been appointed until the final determination of the facts raised by the pleadings. If it should be determined by the facts on which issues should be framed, that the husband had relinquished his claim to his wife's estate, then it is clear that he should not be appointed administrator. It is further submitted that the husband should not have been appointed at all, because, if he is entitled to this personal property of his wife, he is entitled to it not by virtue of any letters issued to him by this court, but by virtue of his marital rights as husband.

*Mr. Francis P. Sheehy, Mr. Vincent A. Sheehy,* and *Mr. Charles Bendheim* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The material questions presented, upon the conflicting claims made in the court below, are but two:

1. What were the rights of a surviving husband in the personal estate of his deceased wife, dying intestate, before and independently of the married women's acts of 1869 and 1896; and,

2. To what extent and in what respects have these acts changed or modified the rights of a surviving husband in the personal estate of his deceased wife, dying intestate, if any such changes be made by those acts?

1. That the surviving husband of a deceased wife, dying intestate, was entitled to administer upon, and to take in his own right, the personal estate of the wife, of which she died possessed or entitled to receive, whether consisting of *choses in action,* or choses in possession, can admit of no serious question. Whether the right was or is founded in the relation of next of kin, or at the common law, *jure mariti,* is a question of no special or material importance at this day, after so many decisions declaring the right, without reference to the source of its origin. Mr. Justice Williams, in his very valuable and authoritative work on Executors (Vol. 1, p. 337), says:

" Before inquiring into the rights of those persons expressly pointed out in the statutes, it is proper to consider that of the husband to be the administrator of his wife. This right belongs to the husband *exclusively of all other persons,* and the ordinary has no power or election to grant it to any other. The foundation of this claim has been variously stated. By some it is said to be derived from the statute of 31 Edw. III, on the ground of the husband being ' the next and most lawful friend ' of his wife; while there are other authorities, which insist that the husband is entitled at common law, *jure mariti,* and independently of the statutes. But the right, however founded, is now unquestionable, and is expressly confirmed by the statute 29 Car. II, Ch. 3,

which enacts, ' that the statute of distribution (22 & 23 Car.
II, Ch. 10) shall not extend to the estate of *femes covert,*
that shall die intestate, but that *their husbands may demand
and have administration of their rights, credits, and other
personal estate,* and receive and enjoy the same as they might
have done before the making of the said act.' This right of
administration to the wife is not an ecclesiastical, but a civil
right of the husband, though in England it is, or rather was,
a right to be administered in the Ecclesiastical Courts."
*Elliott* v. *Gurr,* 2 Phillim. 16, 20.

This right of the surviving husband to administer upon the
estate of his deceased wife was not only recognized but clearly
affirmed as an existing right in the testamentary act of
Maryland of 1798, Ch. 101, Subch. 5, Secs. 8 and 9, wherein
it is provided, " that if the intestate be a married woman, it
shall not, as heretofore, be necessary for her husband to take
out letters of administration, but all her *choses in action*
shall devolve upon her husband, in the same manner as if
he had taken out such letters;" and, in the next section,
direction is given in what manner a declaration shall be
made to entitle the husband to recover without letters of
administration.

This act of Maryland, of 1798, Ch. 101, is in force in
this District, and must be observed, unless it be changed or
modified by the acts of Congress of April 10, 1869, embodied
in sections 727 to 730, Rev. Stats., United States, relating to
the District of Columbia, and act of June 1, 1896,— known
as the married women's acts. Has there been any such
change produced by these acts of Congress ? This question
will be answered in what we have to say in regard to the
second proposition involved.

2. With respect to the question, how far the pre-existing
law upon the subject has been changed or modified by the
married women's acts, it may be proper to refer to and
state in terms the provisions of those acts that are in force
and apply to the question here involved.

The provisions of the act of April 10, 1869, were repealed·
and re-enacted, as in some respects modified, by the act of

June 1, 1896, except the provision of the former act embodied in section 728 of the Revised Statutes, relating to the District of Columbia; which section 728 provides that "Any married woman may convey, devise, and bequeath her property, or any interest therein, in the same manner and with like effect as if she were unmarried."

By section 1 of the amendatory act of 1896, it is provided, " that the property, real and personal, which any married woman in the District of Columbia may own at the time of her marriage, and the rents, &c., thereof, and real, personal, or mixed property which shall come to her by descent, devise, purchase, or bequest, or the gift of any person, shall be and remain her sole and separate property, notwithstanding her marriage, and shall not be subject to the disposal of her husband or liable for his debts, except that such property as shall come to her by gift of her husband, shall be subject to, and be liable for the debts of the husband existing at the time of the gift."

By section 2 of this amendatory act of 1896, it is provided, " That a married woman, while the marriage relation subsists, may bargain, sell, and convey her real and personal property, and enter into any contract in reference to the same, in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property, and she may, by a promise in writing, expressly make her separate estate liable for necessaries purchased by her, or furnished at her request, for the family."

It is further provided in the third section of this amendatory act, " that any married woman may carry on any trade or business, occupation or profession, by herself, or jointly with others, and perform any labor or services on her sole and separate account, and the earnings of any married woman from her trade, business, &c., shall be her sole and separate property, and may be used and invested by her in her own name."

The fourth section provides that a married woman may contract, and sue and be sued in her own name, in all matters having relation to her sole and separate property, as if

she were unmarried; and by section 5, it is provided, that neither the husband nor his property shall be bound by any such contract, made by a married woman, nor liable for any recovery against her in any such suit; and by the sixth section, it is declared that nothing in the act contained shall invalidate any marriage settlement or contract. The act repeals all the provisions of the previous act of 1869, embraced in the Revised Statutes, D. C., in relation to the separate property of married women, except section 728, which we have above recited.

The foregoing are all the provisions of the married women's acts in force in this District, that have any relation to or bearing upon the questions involved in this case.

By the terms of the provisions quoted, it is made plain that during the life of the wife the property acquired by her, in the manner provided, she has absolute and entire control of, to the exclusion of her husband, with the right to dispose of it as she may think proper, by bargain and sale, or deed or will, without any regard whatever to any marital rights of the husband. But, as must be observed, the statute is entirely silent as to the disposition or devolution of the property in the event of the death of the wife intestate. In that event the law is left to stand as it stood before the passage of the acts to which we have referred. Repeals by implication are never favored, and are never supposed to be intended except where the provisions of the prior and subsequent statutes are in manifest and irreconcilable conflict, and then only to the extent that they do so conflict. And so no statute is to be construed as altering the rules of the common law, farther than its words plainly import; and where the legislature makes a plain provision in regard to any subject-matter, the courts are not at liberty to add to or extend that provision beyond the plain import of the words employed. *Shaw* v. *Railroad Company*, 101 U. S. 557. The statute before us makes a plain provision in regard to a subject well understood,— its purpose being to change in certain definite respects the law in regard to the property of married women. The statute in its purpose and character is an enabling act,

intended to give protection to the extent, and only to the extent, that protection was needed. The act of Congress is expressed in plain terms, and leaves no room for conjecture. In such case the rule is imperative, and cannot be departed from without assuming on the part of the judicial tribunals legislative powers. *French* v. *Spencer,* 21 How. 228, 238.

While conceding that the statute is entirely silent as to the devolution of the property of a married woman who may die intestate, the counsel for the appellant contends that there is a policy, indicated by the general course of legislation upon the subject, that should direct the interpretation of the statute, and by which the property of a married woman dying intestate should be made to devolve upon the children of the deceased as her next of kin, to the entire exclusion of all marital rights of the surviving husband. But this, to say the least of it, is a most precarious and unreliable ground upon which to base a rational interpretation of the plain words of a statute. Policy, as said by the Supreme Court, is a very uncertain thing, upon which all sorts of opinions, each variant from the other, may be formed by different persons. It is a ground entirely too unstable upon which to rest the judgment of the court in the interpretation of a statute. *Hadden* v. *The Collector,* 5 Wall. 107.

The provisions of the act of April 10, 1869, so far as the present questions are dependent upon the married women's act, were substantially, indeed literally, the same as those contained in the act of June 1, 1896. The provisions of the former act, so far as they were supposed to affect the rights of a surviving husband in the personal estate of the wife dying intestate, were fully considered by the Supreme Court of this District, sitting in its appellate capacity in general term, in the case of *Chadsey* v. *Fuller,* 6 Mackey, 117. The case was heard and decided by an able court, in 1887, and the carefully-prepared opinion was delivered by Mr. Justice Cox. There is much of that opinion that is quite pertinent and fully applies to the present case. In the course of the opinion, the learned justice said:

" But if the wife should die leaving personalty, without

having attempted to dispose of it by will or otherwise, a state of things is presented in regard to which the statute is entirely silent, but there is nothing in it inconsistent with the previous law applicable to that case.   The wife may have unlimited control during her life, but this is entirely consistent with the husband's right of succession after her death, if she has retained her property and chosen to die intestate.

" There is, therefore, no repeal by implication of the act of 1798, which would be the result of an inconsistency. between that and the act of Congress.   And this conclusion is certainly in harmony with the manifest object of the law. The evil of the old law was that the wife's property, during her lifetime, was at the mercy of her husband, and liable to be wasted by him to her detriment; but it never was considered an evil that her relatives, perhaps collateral in a remote degree, were not preferred in the succession to the husband.   The law aimed at the protection of the wife, but it is hardly conceivable that the lawmakers' solicitude extended to her relatives.   The title of the original act was 'An act to regulate the rights of property of married women, etc.'   While it declares that the right of any married woman to her property should be as absolute as if she were unmarried, it nowhere declares that the rights of her heirs or next of kin, in the event of her death, shall be the same, or that her estate shall descend or be distributed in like manner, as if she were unmarried.   And no such idea is involved in this definition of her rights, because the question of succession pertains to the rights of her heirs and next of kin and not to hers."

This construction of the statute, so well and forcibly expressed by Mr. Justice Cox, is in strict accord with the construction of similar statutes by the State courts.   It seems to be well settled that the married women's acts, such as we have in this District, in the absence of unequivocal language, do not change the common law rule with reference to separate personal property of a married woman, not disposed of in her lifetime, nor by will; but it goes to her surviving husband by virtue of his marital rights in the same manner as under

the old law. *Ransom* v. *Nichols,* 22 N. Y. 110; *Barnes* v. *Underwood,* 47 N. Y. 351; *Brown* v. *Brown,* 6 Humph. 127; *Wilkinson* v. *Wright,* 6 B. Monroe, 576, and 2 Schouler, Husb. and Wife, Secs. 407–409, where the subject is fully discussed, and the result of the cases stated.

As we have stated, the case of *Chadsey* v. *Fuller* was decided in 1887, and we are not aware that that case has ever been questioned by bench or bar until the present proceeding. That decision would seem to be founded in solid reason, and consequently there is no real ground for the contention of the appellants in this case. It nowhere appears to have been the purpose of Congress in passing the married women's acts to break up and destroy all mutuality of rights as between the husband and wife dying intestate. If the wife survives the husband she is entitled to her dower in his real estate, and to her distributive portion of his personalty; and there would seem to be no justice in depriving him as survivor of all right or interest in the personal estate of the wife, remaining undisposed of by deed or will at the time of her death.

But as showing in a very decisive manner what the law has been and is upon this subject in this District, we may refer to the code recently adopted by Congress. That code, as we all know, was compiled by Mr. Justice Cox, and after it was subjected to great scrutiny by judges and lawyers of the District, it was submitted to Congress and was again critically examined by committees of the two Houses. The great need and object of the code was to reduce the law of the District to a consistent form, and while some changes in existing law have been made by the code, we do not suppose, and, indeed, we feel quite sure, that there has been no substantial change in the provisions of the married women's acts as they existed at the time of the adoption of the code, March 3, 1901. The only thing done in respect to the provisions of those acts was to employ terms to make explicit matters about which the original acts of Congress were silent, but which matters were provided for both in the English statute of Charles II, and in the testamentary act of Mary-

land of 1798, Chap. 101. As a full statement of the law, therefore, the Code provides, in section 1160, under title,— *"Administration on Wife's Estate.*— On the death of any married woman owning real or personal estate and intestate thereof, her said estate shall be administered on as if she had been unmarried, and in the appointment of her administrator her husband shall be entitled to be preferred. After payment of her debts her said personal estate shall be the property of her husband."

The married women's acts having conferred the right upon the wife of separate contract in relation to her property, the effect of those acts rendered it necessary that there should be administration upon the estate of the wife in order to protect the rights of creditors. But with this necessary modification of the testamentary act of 1798, Ch. 101, the law as stated in the code, and as was enunciated in *Chadsey v. Fuller,* is and has been the law of this District ever since its organization in 1801.

In the answer of one of the appellants to the petition of the surviving husband for letters of administration upon the personal estate of the deceased wife, it is alleged that her mother, the deceased, was in business for herself prior to her death for many years, and that she acquired a large amount of property, both real and personal, as her own separate estate, free from the debts or any claim of her said husband; that all of the business was conducted by her and in her own name, and that the property left by her at the time of her death was her sole and separate estate, and that the only persons entitled thereto are the children of the deceased. It is also alleged that the fund of $4,425, deposited in bank in the name of the deceased, was money that she had earned in her business. These contentions are denied by the surviving husband, and there has been no proof offered to sustain the exclusive claim of the children. It is contended on behalf of the children that, on the facts alleged and by virtue of the married women's acts, the fund in bank and the other property acquired by the deceased was her sole and separate property, and that all right thereto of the surviving

husband is effectually excluded, and that he has no right to administer thereon. And in support of this contention, the cases of *Marshall* v. *Beall,* 6 How. 70, and *Ward* v. *Thompson,* 6 Gill & Johns. 349, are cited and relied on.

If the cases cited were anything like the present they would not only be entitled to great respect, but would be controlling. But they have little or no resemblance to the present case. They were cases where, by conventional settlements, the husband had renounced and surrendered all marital right and title to the property, not only during the life of the wife, but after her death in favor of her representatives. In the opinion of the court, in *Ward* v. *Thompson,* it was said: "Had such an omission occurred in an antenuptial contract in the usual form, securing her property to the wife for life, without any interference or control of the husband, and giving to the wife the power of testamentary or other disposition in her lifetime, as in the case of *Stewart* v. *Stewart,* 7 Johns. Ch. 229, the right of the husband to the property, and of the administration thereof, over which the wife had failed to exercise her power of appointment, could not be controverted. The marital rights of the husband having been suspended only during the life of the wife, after her death they are as efficaciously revived, as regards the future, as if no such suspension had ever taken place. As a necessary consequence, he is entitled to all the undisposed of personal estate, and *choses in action* of his deceased wife."

The case of *Marshall* v. *Beall,* 6 How. 80, lays down the same principle as that laid down in *Ward* v. *Thompson,* and adopts and follows that case, and the principle of *Stewart* v. *Stewart,* in 7 Johns. Ch. 229.

In the case of *Stewart* v. *Stewart,* the leading American case upon this subject, the principle was most fully and learnedly discussed by Chancellor Kent. In his opinion, among other propositions stated, he said: "The court cannot take away the right of the husband to the personal estate of his wife, when it is not taken away by the settlement, or by the exercise of the power of appointment under it. When the settlement makes no disposition of the property, in the

event of the wife's death, and provides only for the dominion over it during coverture, the right of the husband, as survivor, is a fixed and stable right, over which the court has no control, and of which he cannot be deprived. The settlement cannot be extended, by construction, beyond the just and fair import of its provisions; and, clearly, the court cannot create a settlement, or a disposition of property, in violation of the *jure mariti,* when none has been made by the party. There is, then, nothing in the settlement in question that barred the husband, in default of an appointment by the wife, to claim and appropriate to himself her personal estate remaining undisposed of at her death. Whether he succeeds to her property, *jure mariti,* or as her next of kin, as many of the books have expressed it, does not seem to be at all material; and any question as to the accuracy of the expression, is rather matter of verbal criticism, than of substantial use. The husband is her next of kin, by relation of marriage; and he takes in consequence of being her husband, and by reason of that relation. It is in this sense only, that he is spoken of as her next of kin. When the wife's next of kin are mentioned in settlements, the words are understood to be used in the ordinary and popular sense, and it is evident the husband is not intended. It is sufficient, in this case, to observe, that when the wife's *choses in action,* or other personal property, over which she has control by settlement, is left undisposed of after her death, the husband who survives her, must, of course, take it, and with as good a right and title in law, as the heir takes the undevised estate of his ancestor."

We do not deem it necessary to refer to other authorities. The authorities are abundant, both English and American, in support of the conclusion stated by Chancellor Kent.

There is an objection taken to the fitness or competency of the surviving husband to administer upon the wife's estate, upon the ground, as alleged, that he is addicted to the excessive use of intoxicating drink. But there is nothing to support the allegation, if it were even allowable as a cause for depriving the surviving husband of a right conferred upon him by law. It is not necessary, however, that we ex-

press any opinion upon the subject. It is also alleged that he has been accused and convicted of an infamous crime, and therefore he should not receive letters of administration. But the evidence does not support the truth of the allegation. On the contrary, it is shown that he was acquitted of the accusation made against him many years ago.

3. There seems to have been a demand made by the appellants, or in their behalf, of the court below, for an issue to be tried by a jury, whether the personal property of the wife, undisposed of at her death, was her sole and separate estate. But that is simply a question of law to be decided by the court, and not a question of fact to be decided by a jury. That the property undisposed of at the death of the wife, was her sole and separate estate, may be conceded, and yet, as we have seen, the rights of the husband are not excluded, either as to the administration, or the property itself, except only the property will be liable to the debts of the wife. The jury have nothing to do in determining the question of the right of the surviving husband to administration upon the personal estate of his deceased wife; and the court below committed no error in refusing to grant letters of administration to the two children applying therefor, and in granting letters to the surviving husband. Upon application to have an issue framed and sent to a jury for trial, the court will determine, as matter of law, whether there be any such matter of fact to be determined as will justify the framing of an issue and submitting it to a jury for determination. If such issue be not proper to be framed and submitted to a jury, the court will refuse the application. *Smith* v. *Young,* 5 Gill, 197, 204; *Cain* v. *Warford,* 3 Md. 454.

We find no error in the action of the court below, and the order appealed from will be *affirmed; and it is so ordered.*\*

---

\* This case was removed by writ of error and appeal to the Supreme Court of the United States, and that court, after consideration of motions by the appellee, submitted on printed briefs, to dismiss or affirm, postponed the determination of the motions until the final hearing. Subsequently, by stipulation of the parties, the appeal and writ of error were dismissed, the order appealed from appointing the appellee administrator was vacated, and the case settled by compromise.— [REPORTER.